IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TABITHA OWENS and <br> CHAD WALTERS, <br> on behalf of themselves and all others <br> similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GLH CAPITAL ENTERPRISE, INC., <br> M.L.K. ENTERPRISES, LLC, <br> BACKSTREET ENTERTAINMENT, <br> LTD., <br> CHARLES "JERRY" WESTLUND, JR., <br> an individual, and DOES 1-10, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 3:16-CV-1109-NJR-SCW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

A Motion for Conditional Certification of Collective Action under 29 U.S.C. § 216(b), filed by Plaintiffs Tabitha Owens and Chad Walters, is pending before the Court. (Doc. 10). For the reasons set forth below, the Court grants the Motion for Conditional Certification.

FACTUAL AND PROCEDURAL BACKGROUND

This action arises under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, and the Illinois Minimum Wage Act, 820 Ill. Comp. Stat. § 105/1. Tabitha Owens (Owens) and Chad Walters (Walters) (collectively "Employees") are former employees of Defendants GLH Capital Enterprise, Inc., M.L.K. Enterprises, LLC, Back Street Entertainment, Ltd., Charles "Jerry" Westlund, Jr., and Does 1-10 (collectively

"Employers").

Under the FLSA employers are prohibited from requiring an employee to work more than forty hours in a workweek unless the employee receives compensation of at least one-and-a-half times their regular rate. 29 U.S.C. § 207(a)(1). For violations of this provision, the FLSA authorizes collective actions by employees on behalf of themselves and other employees who are "similarly situated."29 U.S.C. § 216(b).[1]

Employees allege on their own behalf, and on behalf of the potential class, that Employers willfully violated the FLSA by failing to pay overtime at a rate of one-and-a-half times Employees' regular rate, for hours worked in excess of forty hours in a workweek. (Doc. 10, p. 2). Employees request this Court conditionally certify a collective action, defining the potential class as:

> **All non-exempt cooks, servers, bartenders, and assistant managers who worked for Defendants at any time in the past three years.**

(Doc. 10, p. 2). Employers oppose certification, arguing: (1) Employees cannot prove potential members of the proposed class are "similarly situated"; (2) Employees cannot prove Employers are joint employers and part of an enterprise-wide action; and (3) Employees cannot prove the three year statute of limitations applies. (Doc. 30, p. 5).

## ANALYSIS

The Seventh Circuit has not identified a specific standard for certifying a collective action under the FLSA. District courts, however, have generally applied an ad

---

[1] Although Employees have raised claims under both the FLSA and Illinois Minimum Wage Act, their request for collective action is based on the FLSA. Collective actions under the FLSA differ from those under Federal Rule of Civil Procedure 23 in that the FLSA requires class members to "opt in," whereas Rule 23 putative class members must choose to "opt-out." *Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770, 771 (7th Cir. 2013). Because Employees are seeking collective action under the FLSA, rather than certification of a class under Rule 23, the Court limits its analysis to that claim for purposes of this Memorandum and Order.

hoc two-step process in these cases.² *Jirak v. Abbott Laboratories, Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001); *Heckler v. DK Funding,* 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007); *Mielke v. Laidlaw Transit, Inc.,* 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004); *Flores v. Lifeway Foods*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003).

In the first, or "conditional certification" step, a court must determine whether the plaintiff and members of the proposed class are similarly situated enough to allow notice to be sent to prospective plaintiffs. *Heckler v. DK Funding,* 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007). Conditional certification typically occurs where the parties have engaged in only minimal discovery. *See Mielke v. Laidlaw Transit, Inc.,* 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004); *Pfohl v. Farmers Ins. Group,* No. CV-03-3080, 2004 WL 554834, at *2 (C.D. Cal. March 1, 2004). At this early stage, courts apply a more lenient "modest factual showing" standard to determine whether the class is similarly situated. *Flores*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); *see also Gambo v. Lucent Technologies, Inc.*, No. 05 C 3701, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005). A factual nexus that binds potential members of a collective action together is sufficient to meet this burden. *Gambo,* 2005 WL 3542485, at *4. If the employees are found to be similarly situated, class members are given notice of the suit and an opportunity to opt-in. *Flores*, 289 F. Supp. 2d at 1045.

The second step of certification occurs after substantial discovery is complete, at which time the party opposing collective action typically moves to decertify the class.

---

² The parties agree the two-step process for certification of the class is appropriate in this case. (Doc. 10, p. 9; Doc. 30, p. 6).

*Mielke*, 313 F. Supp. 2d at 762 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). At this stage, the Court makes a more stringent, factual determination as to whether the members of the class are similarly situated. *Mielke*, 313 F. Supp. 2d at 762; *Thiessen,* 267 F.3d at 1103.

Here, request for conditional certification by Employees is appropriate because the parties have not yet participated in significant discovery. A Scheduling and Discovery Order was filed in this case on January 12, 2017. (Doc. 32-1, p. 1). The only discovery deadlines that have passed are those for initial interrogatories and requests to produce pursuant to Federal Rules of Procedure 33 and 34 and SDIL-LR 33.1. (Doc. 32-1, pp. 1-2). Since the parties are not expected to complete discovery for at least another six months,[3] Employees' request to conditionally certify the class is proper, and the more lenient "modest factual showing" standard is applicable.

A. SIMILARLY SITUATED

Here, the parties disagree as to whether Employees and the proposed class are similarly situated. (Doc. 10, p. 12; Doc. 30, p.1). Employees argue the proposed class is similarly situated because all members are non-exempt employees who are entitled to uncompensated overtime pay. (Doc. 33, p. 4). Conversely, Employers argue the proposed class is not similarly situated because of differences in the day-to-day job duties and method of payment for different groups of employees.[4] (Doc. 30, pp. 12-13).

---

[3] According to the Scheduling and Discovery Order, depositions of the parties are not required to be completed until October 26, 2017, and depositions of expert witness are not required to be completed until December 20, 2017. (Doc. 32-1, p. 2).

[4] Employers make two additional claims the Court finds wholly unpersuasive. First, Employers claim that those who worked less than 40 hours per week are not similarly situated to those who worked more than 40 hours per week. (Doc. 30, p. 12). Employers' argument appears to be that there cannot be a collective action based on improper overtime compensation because some people were not entitled to overtime.

**1. APPLICABILITY OF DAILY JOB DUTIES**

Employers object to the class designation, arguing it is improper to "lump together" cooks, servers, bartenders, and assistant managers in the same class (Doc. 30, p. 12), because they have different day-to-day duties (Doc. 30, p. 13). This argument fails, however, because the differences in job duties are not relevant to Employees' FLSA claim. Courts have recognized that plaintiffs can be similarly situated despite differences in job titles, functions, or pay. *Jirak,* 566 F. Supp. 2d at 848-49; *see also Garza v. CTA*, No. 00 C 0438, 2001 WL 503036, at *3 (N.D. Ill. May 8, 2001) (existence of different pay and jobs did not prevent plaintiffs from operating under the same policies that entitle them to overtime pay). Where plaintiffs and proposed class members are alleged to be victims of "a common policy or plan that violated the law," courts have found them to be similarly situated, regardless of day-to-day job duties. *Jirak,* 566 F. Supp. 2d at 847-48 (citing *Thiessen*, 267 F.3d at 1102; *Flores*, 289 F. Supp. 2d at 1045; *Summa v. Hofstra University*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010)); *see also Gambo*, 2005 WL 3542485, at *5.

Here, Employees allege a common policy or plan of willfully failing to pay non-

---

The Court fails to see how this could be a legitimate basis for refusing to certify the collective action. Clearly, those who are not entitled to overtime will not be able to "opt-in" to the class because they will not have a legal claim. The "Notice of Right to Join Lawsuit" addresses this by limiting the section titled "Your Right to Participate in this Lawsuit" to those who believe Defendants failed to pay them time-and-a-half for "*hours above 40 that you worked in a workweek…*"(Doc. 10-1, p. 2) (emphasis added). The second additional claim raised by Employers is that each member of the class may have worked for different employers or under different management. (Doc. 30, p. 13). However, at the "conditional" phase of certification, the Court "does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." *Summa v. Hofstra University*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. Jun. 1, 2010). Rather, if discovery demonstrates the putative class is inappropriate, unjustified, or unworkable, Defendants have a right to seek decertification during the second phase. *Gambo,* 2005 WL 3542485, at *5. After substantial discovery has been conducted, if Employers believe part of the class should be decertified, the Court will certainly entertain such a motion. The argument, however, is currently premature.

exempt employees for their overtime work. (Doc. 33, p. 4). It is therefore their non-exempt status and right to overtime, and not their daily job functions, that bind the proposed class of employees.

Employers disagree, arguing this Court must look to the type of work performed by each employee to determine whether they are similarly situated. (Doc. 30, p. 13). Employers argue[5] that because dish washers, bartenders, servers and assistant managers perform different daily functions, they are not similarly situated (Doc. 30, p. 13). For their contention, Employers rely on *Holt v. Rite Aid Corp.,* 333 F. Supp. 2d 1265 (M.D. Ala. 2004), and *Mike v. Safeco Ins. Co. of America,* 274 F. Supp. 2d 216 (D. Conn. 2003).[6] (Doc. 30, pp. 8-9). The Court does not, however, read these cases to stand for the proposition that daily job duties drive the similarly situated analysis. Both cases involve management level employees who claimed their classification as *exempt* was improper, and they were entitled to overtime pay. *Holt,* 333 F. Supp. 2d at 1271; *Safeco,* 274 F. Supp. 2d at 220-21 (emphasis added). The federal regulations at issue in the cases defined an employee as exempt if they spent more than 50% of their time performing executive tasks; or, if executive tasks predominated or defined the job, even if they were performed less than 50% of the time.[7] *Holt,* 333 F. Supp. 2d at 1271; *Safeco,* 274 F. Supp.

---

[5] The Court is inferring this argument based on Employers' Memorandum in Opposition to Plaintiff's Motion for Collective Action (Doc. 30). The Court notes the arguments contained in the Memorandum are disjointed and difficult to follow. The court has addressed the argument it believes Employers attempted to raise.

[6] Employer also cites to *Bunyan v. Spectrum Brands, Inc.,* 3:07-CV-00089-MJR (S.D. Ill. July 31, 2008). However, the Court in that case specifically applied a higher standard in determining certification because the parties had already engaged in fifteen months of discovery, including interrogatories, depositions and the exchange of a large number of documents. *Bunyan,* 3:07-CV-00089 at Doc. 93, pp. 8-9. As a result of the difference in the degree of discovery, and the related application of a different (higher) standard than is required here, the Court does not find this case applicable.

[7] Both courts referenced additional codes that are not necessary to discuss for the purposes of this analysis, other than to note that they required even more fact specific analysis.

2d at 220 (both citing 29 C.F.R. § 541.103). In order to determine whether the employees were properly certified as exempt, the courts would have to assess how much time an employee spent on each day-to-day task and whether those tasks predominated or defined the job. *Holt,* 333 F. Supp. 2d at 1274; *Safeco,* 274 F. Supp. 2d at 220. Because it was impossible to determine whether individual managers were misclassified without an assessment of their daily duties, the courts found the class could not be certified. *Id.*

Here, an analysis of the employees' daily duties is not necessary to determine whether they qualify as members of the class. In *Holt* and *Safeco,* the type of work done by individual employees was directly related to the underlying claim that they were misclassified as exempt. Here, the type of work done by a dishwasher or bartender is wholly irrelevant to the underlying claim of whether they were properly paid overtime. Every member of Employees' proposed class is already identified by Employer as being non-exempt, and therefore entitled to overtime.[8] Nothing about the job duties of the employees would change that status, nor do Employers appear to make such an argument. Therefore, unlike *Holt* and *Safeco*, Employees' day-to-day duties are irrelevant to the FLSA claim of unpaid overtime and thus are not determinative of whether the class is similarly situated.

## 2. DIFFERENCE IN PAY STRUCTURES

Employers further argue that the proposed class is not similarly situated because they have different pay structures. (Doc. 30, pp. 12-13). Specifically, a different minimum wage is in place for those employees who receive tips (Doc. 30, pp. 12-13),

---

[8] Plaintiffs' First Amended Collective and Class Action Complaint states Owens was originally hired as an Assistant Manager with a salary, but never made more than $420 per week. (Doc. 25, p. 6). Further, in April 2016, Employers switched Owens to an hourly employee, paying her $10.50 per hour. (Doc. 25, p.6).

and therefore, Employers argue the tipped employees are not similarly situated to the other members of the proposed class. (Doc. 30, pp. 12-13). However, the Seventh Circuit has previously held that where common questions predominate, the plaintiffs may be similarly situated even if the specifics for compensation vary. *Alvarez v. City of Chicago*, 605 F.3d 445, 449 n.1 (7th Circ. 2010). In *Alvarez v. City of Chicago*, paramedics employed by the city of Chicago filed an action under the FLSA claiming the city willfully failed to compensate them for overtime. *Id.* at 446. The Court found that if the paramedics ultimately recovered, their damages could be determined by a mathematical formula common to all class members, even if specifics like the number of hours or wage varied. *Id.* at 449 n. 1. Because the paramedics had the same predominate claim—willful failure to pay overtime—the class was homogenous despite the fact they might be compensated using slightly different pay theories. *See id.* at 448-49.

In both *Alvarez* and here, the predominant question in the case is whether Employers willfully failed to pay overtime. (Doc. 25, p. 2). Since that claim is the same for both tipped and non-tipped employees, that fact that they may be compensated somewhat differently does not prevent them from being a homogenous group. Like in *Alvarez*, the Court finds that a mathematical formula could be created to determine the damages for both those employees who receive tips and those who do not. As a result, any difference in pay schedules is not sufficient to prevent conditional certification of Employees' proposed class.

### B. JOINT EMPLOYERS

Employers contend that Employees have failed to show they are "joint

employers." (Doc. 30, p. 9). The Court notes that Employers do not claim they are in-fact separate employers. Rather, they allege an individualized inquiry is necessary to determine whether they are joint employers, and that the certification process should be delayed until such a determination can be made. (Doc. 30, p. 9). The Court finds this argument both specious and premature.

Employers are clearly in the best position to know whether the four specifically named defendants are in fact joint employers. Even if Employers are unsure whether one of the companies currently identified as "Does 1-10" qualifies as a joint employer, they will be able to obtain that information through the discovery process and have the opportunity to request decertification after discovery is substantially complete. *Gambo,* 2005 WL 3542485 at *5. The only case Employers cite, *Pfohl v. Famers Ins. Group,* specifically acknowledges that such a claim should take place at the second—more onerous—decertification step. *Pfohl,* WL 554834, at *3; *See also Jirak,* 566 F. Supp. 2d at 850 (arguments about dissimilarities in the class are more appropriate after discovery). The Court thus finds unpersuasive Employers' argument that conditional certification should be delayed in order to determine whether the identified companies are "joint employers."

### C. APPROPRIATE STATUTE OF LIMITATIONS

If an employer's actions were willful, the FLSA provides for an extension of the normal two year statute of limitations, to three years. 29 U.S.C. § 255(a). A FLSA violation is "willful" if the defendant "either knows he is committing or is reckless about whether he is committing a violation." *EEOC v. Madison Cmty. Unit Sch. Dist. No,*

*12,* 818 F.2d 577, 585 (7th Cir. 1987) (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125–29 (1985), and *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310–11 (7th Cir. 1986)). A very low bar exists for plaintiffs to obtain notice under the three-year statute of limitations. *Frebes v. Mask Rests., LLC,* No. 13 C 3474, 2014 U.S. Dist. LEXIS 63531, at *12 (N.D. Ill. May 8, 2014); *see also Sylvester Wintrust Fin. Corp.,* No. 12 C 01899, 2013 U.S. Dist. LEXIS 140381, at *18-19 (N.D. Ill. Sept. 30, 2013)(finding one conclusory allegation of willfulness sufficient to warrant notice with a three-year statute of limitations); *North v. Bd. of Trustees of Ill. State Univ.*, 676 F. Supp. 2d 690, 696 n.8 (C.D. Ill. 2009) (where plaintiff alleges willfulness, "the three year statute of limitations can be assumed to apply until the Court determines whether the violation was "'willful'").

Employers allege it is unclear from the Amended Complaint what facts support Employees' claim that a three year statute of limitation should apply. (Doc. 30, p. 14). The Court notes, however, that Walters's sworn declaration states there were weeks he worked over 40 hours, but was never paid overtime. (Doc. 10-3, ¶ 2). Similarly, Owens's sworn declaration states she regularly worked 6-7 days per week, for more than eight hours each day, but did not receive overtime pay. (Doc. 10-2, ¶¶ 11-14). Both Owens and Walters also state they had conversations with other employees who complained of not being paid overtime (Doc. 10-2, ¶ 19; Doc. 10-3, ¶¶ 11-14). Therefore, Employees have clearly pled facts alleging they and other members of the proposed class were not paid overtime by Employers.

Employees have also pled facts supporting their claim that Employers' failure to pay overtime was done either knowingly or recklessly. Owens's sworn declaration

contains a copy of her paycheck stub for the period May 9, 2016 through May 22, 2016. That paystub shows Owens working 110:54 hours—resulting in 30:54 hours of overtime—but being paid for the entire period at her regular rate of $10.50 per hour. (Doc. 25-3, p. 1). Employers' failure to correctly calculate the overtime amount is sufficient to show either knowing or reckless behavior for conditional certification purposes. Additionally, Owens states that one of Employers' managers informed her and other employees in June 2016 that they could no longer record more than eighty hours in a two-week pay period, regardless of how many hours they actually worked. (Doc. 10-2, ¶¶ 15-16). Clearly, such an allegation supports the claim that Employers acted knowingly.

Given the minimal burden on plaintiffs at the conditional certification stage, the Court finds the allegations made by Employees are sufficient to allege willfulness on the part of Employers and therefore a three-year statute of limitations time period is appropriate.

## Conclusion

For the reasons set forth above, the Motion for Conditional Certification of Collective Action (Doc. 10) is **GRANTED** consistent with the provisions of this order. The Court **FURTHER ORDERS**: (1) Notice of this action shall be sent to all current or former individuals who worked for Employers as non-exempt cooks, servers, bartenders or assistant managers for three years prior to the date of this Order; (2) Employers shall have until **July 24, 2017** to provide counsel for Employees with the name, dates of employment, job title, last known address, any cell phone numbers, and

email addresses of all proposed class members—in a format mutually agreed upon by the parties; (3) Employees shall have **14 days** from receipt of the information in (2) to circulate the notice via U.S. Mail, email and text; (4) The "Notice of Right to Join Lawsuit" as set forth in the Motion for Conditional Certification of Collective Action (Doc. 10-1) is approved for notice through U.S. Mail and email; (5) Employees' abbreviated text message, as drafted in Doc. 10, n.6, is approved for notice through text message; (6) Putative class members shall have **60 days** from circulation of the notice in which to opt in to this action.

**IT IS SO ORDERED.**

DATED:  July 13, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**